MARY A. NEIL v. JANE L. TUBB et al., Appellants.

Division One, March 29, 1912.

1. **SCHOOL FUND MORTGAGE: Statutes: Secs. 10817 and 10819: Construed Together.** Section 10817, Revised Statutes 1909, providing that a school fund mortgage shall contain a condition that if default be made in the payment of the principal or interest the sheriff of the county may, upon giving twenty days' notice of the time and place of sale, without suit on the mortgage, proceed to sell the mortgaged premises, which shall be as effectual to all intents and purposes as if such sale and conveyance were made by virtue of a court of competent jurisdiction foreclosing the mortgage; and section 10819, Revised Statutes 1909, providing that when the principal secured by a mortgage containing a power of sale shall become due and

payable the county court may make an order to the sheriff, reciting the debt and interest to be received, and commanding him to levy the same with costs upon the property conveyed by the mortgage, and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly, are to be construed together; and if the sheriff undertakes to sell the mortgaged property when no order of the county court directing him to sell was made, his act is null and void.

2. ————: **Foreclosure and Sale by Sheriff: No Order of Court.** A sale by the sheriff of the mortgaged property, mortgaged to the county by a school fund mortgage, when no order of the county court directing him to sell has been made, as required by section 10819, Revised Statutes 1909, is null and void.

3. ————: ————: ————: **Nunc Pro Tunc Order: Fictitious Proceeding: Notice.** When a court at a former term made an order or rendered a judgment which should have then been entered of record but was not, it may be entered at a subsequent term as for then, provided the court has a sufficient memorandum of its own to show that the order or judgment had actually been made at the former term, and then it becomes a *nunc pro tunc* order or judgment; but when entered it is not the order or judgment now made, but the one then made. Where the county court at its May term, 1905, failed to make an order to the sheriff, reciting the debt and interest due on a school fund mortgage, and commanding him to levy the same, with costs, upon the mortgaged property, an order made at the February term, 1907, after the property had been sold by the sheriff and the mortgage marked satisfied on the record by the clerk, calculating interest on the bond down to date and declaring the mortgage was then due and unpaid, was not a *nunc pro tunc* order, but in all respects in form an original order. Nor did the court at that February term have any right to make an order declaring the mortgage was due and unpaid, and with that statement as a basis order a sale of the land; and, if plaintiff, or her grantor, who purchased at the sheriff's sale made in pursuance thereof, knew all these facts, she did not acquire the title, for that was a fictitious proceeding.

4. ————: ————: ————: **Order Recited in Clerk's Certificate.** A clerk's order to the sheriff to sell the mortgaged property, reciting therein that the county court had previously made an order to that effect, when in fact no such order had been made, was an unauthorized act, and cannot be held to supply the order itself. The only act in that regard that the statute authorizes the clerk to perform is to make a certified copy of the order of the court and deliver it to the sheriff.

Neil v. Tubb.

5. ———: ———: ———: ———: Report of Sheriff Approved. Nor does the fact that the sheriff, who sold the mortgaged property when there was no order of the court directing him to sell, reported the sale to the county court and the court approved it, give any validity to the sale. The court cannot by its approval give validity to an unauthorized act.

6. ———: ———: ———: Collateral Attack: Ejectment. The defendant in an action of ejectment, to which she has answered by a general denial, has the right to defend her possession, and when plaintiff offers proof of his title to object to it for infirmities apparent on its face. Defendant in such case does not seek to have annulled the sheriff's deed under which plaintiff claims, made in the foreclosure of a school fund mortgage without an order of court, nor does she make a collateral attack upon that deed, but she simply requires plaintiff to make legal proof of his title.

Appeal from Butler Circuit Court.—*Hon. J. C Sheppard*, Judge.

Reversed.

*E. R. Lentz* for appellants.

(1) The county courts have the exclusive control of the management, investment and collections of the school funds of their respective counties. Their powers are fixed and determined by statute. The provisions are found in Secs. 10813 to 10821, R. S. 1909. (2) The provisions in relation to the conditions of the mortgage and manner of foreclosure are prescribed by statute. R. S. 1909, sec. 10817. A school fund mortgage made in pursuance of this section cannot be foreclosed by the sheriff until the county court has made and delivered to him its order commanding such foreclosure, as provided in section 10819. Benton Co. v. Morgan, 163 Mo. 675. (3) Before the sheriff has any authority to sell, the county court must make an order to the sheriff reciting the debt and interest to be received, and commanding him to levy the same with costs, upon the property conveyed by the mortgage, which shall be described as in the mortgage; and a copy of such order, duly certified, being deliver-

ed to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly. R. S. 1909, sec. 10819; Benton Co. v. Morgan, 163 Mo. 675. (4) The statute demands that the county court make an order, etc. The county courts are declared by statute to be courts of record, and are required to keep just and faithful records of their proceedings. R. S. 1909, sec. 3845. Courts of record can only speak through their records. Medlin v. County, 8 Mo. 235; City v. Railroad, 81 Mo. 293; Cummings v. Brown, 181 Mo. 718; County v. Salmon, 201 Mo. 151; Morrow v. County, 189 Mo. 624; Riley v. County, 96 Mo. 321. Parol evidence is inadmissible to contradict or supply a record. Milan v. Pemberton, 12 Mo. 598; Mobley v. Nanne, 67 Mo. 549; State v. Ross, 118 Mo. 43. (5) A simple reading of the so-called order of sale will show that the paper read in evidence was not an order of the county court, duly certified, as required by statute, and does not purport to be such, but on its face purports to be a paper in the nature of a special execution, issued by the clerk, upon a supposed judgment rendered by the county court. The statute gives no authority to the county clerk to issue any such paper. The only paper the clerk was authorized to give to the sheriff was a copy of the order of the county court, and that duly certified. Here there was neither. The paper was not a copy of an order of the county court. Nor was it certified as being such. Hence it conveyed no authority upon the sheriff to either sell or convey the land. R. S. 1909, sec. 10819; Benton Co. v. Morgan, 163 Mo. 675. (6) The deed is void for want of necessary recitals. It recites no authority to sell. R. S. 1909, sec. 2231; Turner v. Stine, 18 Mo. 586; Wilhite v. Wilhite, 53 Mo. 74. (7) The debt secured by the mortgage was paid in full on October 21, 1905. On the same day the clerk of the county court delivered the bond and mortgage to the makers. The payment

of the debt absolutely discharged the mortgage, and the county court, thereafter, had no power or authority to make the order which it thereafter did, on Feb. 6, 1907. This order and the deed made in pursuance thereof were therefore absolute nullities. 2 Jones on Mort., sec. 889; McNair v. Picotte, 33 Mo. 71; Pease v. Iron Co., 49 Mo. 128; Kempf v. Ins. Co., 41 Mo. App. 31; Seeser v. Southwich, 66 Mo. App. 670. (8) In the court below counsel argued that the county court had the power to make a *nunc pro tunc* order, supplying the order which should have been entered. But no such question is presented here. The order of Feb. 7, 1907, does not pretend to be a *nunc pro tunc* order, but is from start to finish an original order. (9) None of the elements of estoppel are here present. (10) All the matters herein shown may be given in evidence under the general denial in an action of ejectment. Benton Co. v. Morgan, 163 Mo. 678.

*Phillips & Phillips* for respondent.

(1) The appellants in their brief say that a school fund mortgage made in pursuance of the statute cannot be foreclosed until the county court has made and delivered to the sheriff its order commanding such foreclosure, and cites Benton Co. v. Morgan, 163 Mo. 675. The vice of the argument herein is that in the Benton county case there was no order ever made to sell the land. Here an order was made, as is evidenced by the order, signed and certified to, by the county clerk and delivered to the sheriff, and upon which the sheriff acted. The court's attention is here called to the case of Fontain v. Hudson, 93 Mo. 69. This case has been followed and cited approvingly in Peltz v. Bollinger, 180 Mo. 259. (2) In the case of Jackson County v. Stone, 168 Mo. 582, the sheriff in the discharge of his official duty as such, levied on, advertised and sold the mortgaged land on a duly certified copy of the order of the county court, which the stat-

ute declares shall have the effect of a *fieri facias,* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly. Thus, by express statutory law, the duly certified copy of the order of the county court in the hands of the sheriff became, in fact, a final process, in the nature of and equivalent to an execution on a judgment of a court of general jurisdiction. Benton County v. Morgan, 163 Mo. 676. (3) It does not make any difference whether the clerk ever entered the order of the county court on the record proper, if in compliance with the law he formulated the order of the court, in legal language, signed and delivered it to the sheriff. Then under the doctrine laid down in Fontain v. Hudson, and Peltz v. Bollinger, the sheriff was authorized, and indeed, it was his duty, to proceed to sell the land. So when Mrs. Baird bought it at the sale and paid the amount of her bid and the sheriff receipted her for the same and immediately thereafter reported the same to the county court, and the court approved his report and then commanded him to make a deed to Mrs. Baird in conformity with his report, then all the formalities of law that were required had been complied with, and the deed to Mrs. Baird was a valid and legal deed. R. S. 1899, sec. 9833. A mere irregularity in judicial sales can only be called in question in a direct proceeding and cannot be inquired into collaterally in ejectment. Bobb v. Graham, 15 Mo. App. 289. (5) Where a judicial sale of land is made under the authority of a court having power to order it, and there is no pretense of fraud, the title of the purchaser will not be affected by slight irregularities in the sale. Patte v. Thomas, 58 Mo. 163. (6) If there was any informality in the order of June, 1905, it was corrected and ratified by the subsequent proceedings of the court, and again by the action of the court of February 7, 1907. It is a familiar principle, that where the officers of a county have the power to act, but act irregularly, the county

court may ratify such acts and thus make the acts binding in every essential particular. Valle v. Fleming, 19 Mo. 462; County v. Salem, 201 Mo. 150; Lowring v. Groomer, 110 Mo. 639; Daniel's Practice, 1219.

VALLIANT, J.—Plaintiff sues in ejectment for possession of the south half of lot 1, and east half of the south half of lot 2, of the northwest quarter of section 31 township 25 north of range 6 east, containing 62 acres, in Butler county.

The answer of defendant was a general denial. There is no dispute as to facts, but the dispute is as to the legal meaning and effect of certain documents in evidence.

Louise Sutton is the common source of title. September 21, 1900, she borrowed $500 of the school fund of Butler county, and for its payment she and her husband executed a bond, with personal security, of that date, for that amount, to Butler county, and on the same date executed a mortgage on the land in suit, in conformity with the statute in such case made and provided, to secure the loan; the mortgage was duly recorded. April 25, 1901, Mrs. Sutton and her husband conveyed the land by warranty deed to the defendant Jane L. Tubb, subject however to that mortgage. That is defendant's claim of title.

Plaintiff introduced evidence which she claims tends to show that the mortgage was duly foreclosed, the land sold by the sheriff under foreclosure sale, August 10, 1905, to Mary Baird, the sale reported to the county court and confirmed; that afterwards Mary Baird by warranty deed conveyed the land to one Welborn, and he by like deed to the plaintiff. That is the plaintiff's claim of title.

The decision of the case turns on the point of whether the mortgage was legally foreclosed; the trial court held that it was and gave judgment for the plaintiff; the defendant appealed.

Let us first see what the statute requires and then see if the plaintiff's proof meets the requirements. Section 9824, Revised Statutes 1899, makes it the duty of the county court to cause the school fund's of the county to be invested at interest on mortgages of land in the county double in value to the loan. Section 9827 makes it the duty of the county court to see to the collection of the moneys so loaned, and when paid the clerk is required to indorse the same on the bond and cause satisfaction of the mortgage to be entered on the record. Sections 9832 and 9833 make further provisions in reference to the mortgage to be taken to secure the loan. Section 9833 provides that the mortgage shall "recite the bond and shall contain a condition that if default shall be made in payment of principal or interest, or any part thereof . . . the sheriff of the county may, upon giving twenty days' notice of the time and place of sale . . . without suit on the mortgage proceed to sell the mortgaged premises . . . which shall be as effectual to all intents and purposes as if such sale and conveyance were made by virtue of a court of competent jurisdiction foreclosing the mortgage." Section 9835 is as follows: "Whenever the principal and interest, or any part thereof, secured by mortgage containing a power to sell, shall become due and payable, the county court may make an order to the sheriff, reciting the debt and interest to be received, and commanding him to levy the same with costs, upon the property conveyed by said mortgage, which shall be described as in the mortgage; and a copy of such order, duly certified, being delivered to the sheriff, shall have the effect of a *fieri facias* on a judgment of foreclosure by the circuit court, and shall be proceeded with accordingly."

We have quoted from the Revised Statutes of 1899, because the the rights of the parties in question

arose prior to the revision of 1909, but the statutes are the same now as they were then. [Sections 10817 and 10819, R. S. 1909.]

Under section 9833 it is required that the mortgage contain an authorization to the sheriff on condition broken, to proceed to advertise and sell to foreclose without suit, while section 9835 requires the county court on default of payment to make an order reciting the amount of the debt, principal and interest, and commanding the sheriff to levy the same with costs on the mortgaged property, describing it, and that a copy of the order duly certified be delivered to the sheriff and have the effect of a *fieri facias* as on a judgment of foreclosure in the circuit court. This court has held that those two sections are to be construed together; that if the sheriff should undertake to sell without a duly certified copy of the order of the county court delivered to him in accordance with section 9835, his act would be null and void. [Benton Co. v. Morgan, 163 Mo. 661.] In that case the county court had made the order required by the statute, but a certified copy of it had not been delivered to the sheriff, and for that reason it was held that his deed was void.

In the case at bar there was no evidence that the county court ever made an order in reference to this mortgage as required by statute. On the contrary the evidence showed that a careful search by a competent person familiar with the records of the court had been made and no such order could be found in the records; we do not understand the plaintiff as claiming that there is such a record. There was not delivered to the sheriff what purported to be a certified copy of such order. The plaintiff's evidence on that point was a certificate of the clerk of the county court dated June 6, 1905, reciting the mortgage and its contents, and saying that whereas the county court on the 8th day of May, 1905, did find the amount of principal and

interest due on the bond, and did then and there direct that judgment therefor should be entered against the principal and sureties on the bond, and that an order of sale of the property described in the mortgage should issue; then the clerk in his certificate proceeds to order the sheriff to advertise and sell the property. It was under that order that the sheriff acted when he sold the property to Mary Baird under whom the plaintiff now claims. Since that certificate is the main base of the plaintiff's title, perhaps we should copy it here in full:

"To the sheriff of Butler County, Missouri, Greeting:

"Whereas, On the 21st day of September, 1900, Louise Sutton borrowed of the county of Butler, in the State of Missouri, the sum of five hundred (500) dollars, belonging to the capital school funds of the following described school townships in said county, in the several amounts set opposite thereto, respectively, viz.:

"And to the public school fund of said county . . . $500.00, total . . . $500.00, for which sum of borrowed money, the said Louise Sutton, J. N. Sutton, as principal with John H. Souders, William A. Spence and S. M. Chapman as securities, executed a bond to the said county, bearing date 21st day of September, 1900, in which said bond the principal and securities agree and bind themselves to pay to the said county, for the use and benefit of the school township hereinbefore mentioned, on or before the 21st day of September, 1901, the said sum of borrowed money, with interest thereon from the date of said bond, until paid, at the rate of eight per cent per annum; said interest to be paid annually on the 21st day of September, in each and every year, until the whole debt should be paid off and discharged, and

"Whereas, In consideration of the premises, and to secure the payment of said sum of borrowed money,

when the same should become due on the 21st day of September, 1901, the said Louise Sutton and James N. Sutton, her husband, executed and delivered to the said county, for the use and benefit of the said school township, their certain mortgage deed, whereby they conveyed to the said county the following described lot, tract or parcel of land, lying, being and situate in the county of Butler, State aforesaid, viz.: All of south half of lot one (1) of the northwest quarter and all east half of south half of lot two (2) of the northwest quarter of section thirty-one (31), in township twenty-five (25) of range six (6) east, containing 62.28 acres, more or less.

"Upon this express condition, however: That if the said principal and securities should well and truly pay or cause to be paid, the said sum of borrowed money, and all the interest thereon, according to the tenor and effect of said bond, that then, and in that case, said mortgage deed should become void, and that if default should be made in payment of said sum of borrowed money, or the interest thereon, or any part thereof, at the time when they should severally become due and payable, according to the tenor and effect of said bond, that then the then acting sheriff of Butler county aforesaid, should (without any suit on said mortgage deed) proceed to sell at public auction, to the highest bidder, for cash in hand, the property therein conveyed and mortgaged, first giving twenty days public notice of the time, terms and place of sale by publication in some newspaper published in said county; and out of the proceeds of said sale to pay the costs attending such sale, and then the debt and interest due the county of Butler, as aforesaid; which said mortgage deed was recorded in the office of the recorder of said county of Butler, in Book 48, at page 41.

"And, Whereas, The county court of Butler county aforesaid, by an order made and entered of

record on the 8th day of May, 1905, doth find that default has been made in the payment of said sum of money according to the tenor and effect of the said bond, and that the said Louise Sutton is now indebted to the said county for the use of said school township's money in the sum of seven hundred and sixteen and 50-100 dollars, principal and interest, computed to this date, due and unpaid upon the said bond, and then and there directed that judgment therefor should be entered against said principal and securities in said bond, and that an order of sale of the property described in said mortgage deed should issue to satisfy the same;

"Now, Therefore, you, the sheriff of said Butler county, are hereby commanded to levy the said last mentioned sum of money upon the real estate hereinbefore described, and to sell the said real estate according to law to satisfy said debt, interest and costs; and make return of your proceedings under this order to the next term of this court, to be held on the 7th day of August, 1905.

"Witness my hand and the seal of said court, the 6th day of June, 1905.

"George C. Orchard,

"Clerk of the County Court of Butler Co."

The sheriff executed a deed to Mrs. Baird and made a report of the sale to the county court at the November term, 1905, and an order was then made by the court approving the sale. In that report the sheriff said that he had acted in pursuance of an order of the court made at the July term, 1905.

In the order approving the sale there is no reference to any kind of an order of sale by the court. The clerk's certificate under which the sheriff acted did not refer to any action of the court at the July term, 1905, but recited that the court had made an order on the 8th of May, 1905, and the certificate itself was dated June 6, 1905.

The property was knocked off to Mrs. Baird at $300 which sum she paid; $28.66 thereof was applied to paying of costs of the sale, and the balance, $271.34, was credited on the mortgage bond; after which, October 21, 1905, Mrs. Sutton paid the balance that was due on her mortgage and the clerk of the county court on that date, as the statute required, cancelled the bond and satisfied the mortgage on the record.

Afterwards litigation over the title began. Mr. Welborn, who had purchased from Mrs. Baird, brought suit in ejectment against Mrs. Tubb, the defendant in this suit; in the course of that suit it was developed that the defendant disputed the plaintiff's title on the ground that the county court did not order the sale under which Mrs. Baird bought, and when that fact appeared the circuit judge intimated that the point was well taken, whereupon the plaintiff, Welborn, dismissed his suit, and afterwards went before the county court and obtained an order reciting the bond · and the mortgage and the conditions thereof and concluding: "And now on this 6th day of February, 1907, the court finds that default has been made in the payment of said sum of money according to the tenor and effect of said bond, and that the said Louise Sutton is now indebted to the county of Butler to the use and benefit of the capital school fund in the sum of eight hundred and nineteen dollars and eighty-six cents, principal and interest, computed to this date, due and unpaid on said bond. Wherefore," etc. The order goes on to enter judgment against Mrs. Sutton and the sureties for the amount on the bond and an order of sale to be addressed to the sheriff.

This proceeding was nearly two years after the mortgage debt had been paid, and satisfaction entered on the record by the clerk as the statute required. A certified copy of that order was delivered to the sheriff and he went through the form of making a sale thereunder, and the property was struck off to Welborn for

Neil v. Tubb.

thirty-one dollars, which just covered the cost of that proceeding. Plaintiff relies on that deed as curing the defect in the former sale.

Plaintiff's learned counsel speak of this order of February, 1907, as an order *nunc pro tunc,* but in that they are mistaken; this order has no characteristic of an order *nunc pro tunc.* When a court at a former term has made an order or rendered a judgment which should have been then entered on the record but was not, it may be entered at a subsequent term as now for then, provided the court has a sufficient memorandum of its own to show that the order or judgment had actually been made at the former term; but when entered it is not the order or judgment now made but that which was then made. This order which was made in 1907 does not purport to be the record of an order made in 1905, it makes no reference to an order made at a former term. It is in all respects in form an original order, calculating interest on the bond down to date and declaring that the mortgage was then due and unpaid. And there could not have been an order then made *nunc pro tunc* because there was no sufficient evidence before the court on which to base such an order.

Evidence introduced by plaintiff shows that the county court, when it made the order February 6, 1907, knew that this mortgage had been paid and that the circuit court in another suit had intimated that the plaintiff's title was defective for want of an order of sale and knew that the purpose of this proceeding in 1907 was to supply that defect. But whatever the county court may have thought of the merits of the case, it had no right to enter an order on its record saying that the mortgage was due and unpaid and on that statement order a sale of the land, and the plaintiff well knowing all those facts does not strengthen her cause by bringing that proceeding forward and

relying on it. That was a fictitious proceeding and plaintiff derives no title through it.

Going back to the certificate of the clerk June 6, 1905, plaintiff relies on the decision in Fontaine v. Hudson, 93 Mo. 62, l. c. 69-70, where it was held that an execution was valid though issued *eo instanti* on the rendition of the judgment, before the judgment had actually been written into the record; that it was sufficient if the record evidence is in existence when proof of the judgment becomes necessary. But in the case at bar the record evidence was not in existence when the proof of the judgment became necessary; there was no lawful evidence that there ever was such a judgment. The clerk's order to the sheriff to sell the property to foreclose the mortgage reciting therein that the county court had theretofore made an order to that effect was an unauthorized act; the only act in that regard that the statute authorized the clerk to perform was to make a certified copy of the order of the court and deliver it to the sheriff. But of course there could have been no certified copy of such an order because there was no such order. The sheriff reported the sale to the county court and that court approved it, but the court could not by its approval give validity to an unauthorized act.

Respondent in her brief says that appellant cannot attack the sheriff's deed collaterally, but only by a bill in equity. Appellant is not seeking to have the sheriff's deed annulled, she is simply defending her possession in an action of ejectment to which she has answered by a general denial, and when the plaintiff offers proof of her title the defendant objects to it for infirmities apparent on its face. Plaintiff in her action of ejectment must make legal proof of her title, otherwise she cannot recover. Her learned counsel in their brief make an argument on what they call the equity of the case, but this is a law suit in which legal titles must prevail.

Plaintiff has failed to show that she has a legal title to the land in question, therefore she is not entitled to recover. The judgment is reversed. All concur.